**BOWLES, Adm'r, v. LIVINGSTON.**

No. 2828.

District Court, N. D. Georgia, Atlanta Division.

May 9, 1945.

James M. Roberts and Lawrence T. Mahoney, both of Atlanta, Ga., for plaintiff.

Ralph R. Quillian, Mose S. Hayes, and Barrett & Hayes, all of Atlanta, Ga., for defendant.

UNDERWOOD, District Judge.

The application in above case for preliminary injunction was heard orally as well as submitted later on brief.

The prayer is to enjoin defendant "from selling or offering for sale any automobile storage services at prices in excess of the maximum prices established for such services by Revised Maximum Price regulations No. 165." Dead storage is not involved but only daily and monthly storage (Plaintiff's brief, p. 5).

The evidence of violations of regulations relating to daily storage charges is inconclusive and insufficient to justify a preliminary injunction. It is, therefore, denied, but without prejudice to again apply for same if violations occur.

The alleged violation of the regulations relating to monthly storage is that defendant charged more than the ceiling price to an alleged special class of customers. The pertinent regulations provide:

"Section 4. General Pricing provisions. In determining your maximum price, use the first of the following provisions which applies to you. Your maximum price shall be:

"(a) The highest price at which you supplied the same service in March 1942 to a purchaser of the same class * * *."

Defendant bought the business and took charge in October, 1944. But under Section 10 of Regulation No. 165, the maximum price which his transferor might have charged if there had been no transfer is

the maximum price which defendant was required to establish.

In March, 1942, as well as in October, 1944, the service of all cars, regardless of size or make, was the same. The prices for monthly storage filed with the OPA were stated in October, 1944, to be from $6 to $10 per month. The prices for such storage in 1942 by the transferor ranged from $3 to $10 per month.

It appears from the evidence that the price list for monthly storage filed by defendant in October, 1944, showed a rate of $10 for 28 cars; $8.50 for 2 cars; $8 for 11 cars; $7.50 for 50 cars; $7 for 13 cars; $5 for 7 cars; $4 for one car, and $6·for 116 cars.

An analysis of the evidence shows that these rates were not determined by the size of the cars for in each category the charge was the same for large, medium and small cars.

There were eight different rates charged, to-wit: $10, $8.50, $8, $7.50, $7, $6, $5 and $4. In all the categories it appears that the size of the car had nothing to do with the rate charged.

For example, under the $10 rate, there were nine large cars and nineteen medium and small cars.

Under the $6 ·rate, there were forty-two large cars and seventy-four medium and small cars.

Under the $7.50 rate, there were twenty large cars and thirty medium and small cars.

An examination of the space allotted to customers also shows that there was no difference with respect to the space allotted to the cars, although a former employee testified to the contrary, since the building was divided into spaces consisting of three units, each of which would accommodate a car. The record of customers showed that there was no space allotted to any car of more than a single unit.

It will be seen that there was no classification shown which was based upon the size of the car or the space allotted to it, nor was there evidence of any other difference in service rendered.

It appears, therefore, that if any other classification can be adopted which might come within the provisions of the regulations, it could only be based on the prices charged, for example, $10 class, $8.50 class, $8 class, $7.50 class, $7 class, and $6 class.

This seems to be the chief reliance of petitioner, who cites the definition of "purchaser of the same class" as "a purchaser belonging to the same price class, that is, to a group of purchasers to whom it was your established practice in March 1942 to supply or offer to supply the same service at a particular price." (Section 23(a) (10)).

If price is the only basis of classification, and no other is shown by the evidence, you would have in this case several distinct classes which would apparently authorize the rate charged in that particular class.

It is hard to see, however, how a classification can be based on price alone where the service is the same, since the regulation expressly provides that the operator may charge "the highest price at which you supplied the same service in March 1942 to a purchaser of the same class."

This provision clearly envisages different prices in the same class, otherwise there could be no highest price. Or, if you consider an existing classification as determined solely by the fact of the same charge to each customer, there would be no room for the provision that the highest price could be charged, because all prices would be the same. There could be, for example, no highest price of a $6 class.

The sub-section defining "purchaser of the same class" further provides that, "If in March 1942 you customarily supplied or offered to supply the same service to any purchaser at·a price different from the price at which you supplied or offered to supply the same service to all other purchasers, that purchaser is in a purchaser price class by himself."

Plaintiff insists that defendant comes within this provision, yet he has urged with great insistence, without, I think, sufficient proof, that the $10 rate was due to difference in service. Even if this contention be true, the definition would not be

applicable, since, "the same service to any purchaser" was not "supplied or offered" at different prices.

The definition would seem to indicate that to constitute a price class, it would be necessary to show that the operator had an established practice to supply or offer to supply the same service at a particular price to all. This is not shown to be the fact in this case as the determination of price seemed to be based on whatever the operator could obtain from the owner of any automobile, regardless of size, in the range between $6 and $10 per month. The different categories of prices are so constructed that no particular customer can be designated as of the same class, except the general class of automobile owners seeking garage service. The definition is meant to cover a customer ·who can not be brought into a definite class under the established practice of the operator and provision is made for such exceptional case of any particular customer who might, under Section 23(a) (10) be placed "in a particular purchase price class by himself."

Considering the regulations all together and the evidence as a whole, it appears that there was only a single class, to-wit, all owners of automobiles offered for storage and for the same service, but for which service there was a range of prices arrived at by negotiation with the particular car owner and the operator.

Whether the case is considered from the standpoint that the service rendered or offered constituted the basis of classification, or whether several separate classes, determined by the amounts charged, existed, it would seem that the defendant could charge either a single $10 rate for all, or the several rates based on the classification by the amount of the charge alone.

In the latter case, the plan might be workable as far as those already in the class are concerned. It is conceded that the rate of no one enjoying the several different rates, respectively, could have his rate increased. On the other hand, if a new customer comes in, there is no way of determining whether he would fall in a $10 rate class or a $6 rate class, because no difference is made with respect to the kind of car or to the kind of service to be rendered.

It would seem, therefore, that the only workable classification that could have a reasonable basis is the classification of all cars, the service being the same. This being true, defendant was within his rights in charging the highest price at which he supplied the same service in March, 1942, which was $10.

Defendant may be, as claimed by plaintiff, trying to evade the regulations and may be working a hardship on those who have been regular customers for many years, but such acts, if established, could not impose duties and obligations which the regulations do not include. Since it is conceded that defendant can not increase the lower rates enjoyed by old customers and since they are being required to vacate, it is unfortunate that the regulations are not· broad enough to protect them. However, this is an omission that the courts can not supply.

Upon consideration and for the reasons above stated: It is ordered and decreed that the preliminary injunction prayed for be, and hereby is, denied.